## In re J. & M. Doyle, a Corporation

*Thomas E. Doyle,* for petitioners.
*William W. Knox,* for respondents.

EVANS, J., November 16, 1942.—This matter appears before the court on a petition for a declaratory judgment to determine the rights of the stockholders with respect to the distribution of the sum of $18,100, the only asset of the corporation following bankruptcy proceedings in which the corporation's assets were sold and all debts paid. All parties who will be affected

by this decree were served with a copy of the petition and were represented by counsel at the time of hearing.

It is averred that the claimants to the fund threaten legal action and that there is a disagreement as to the rights of the stockholders which must be determined from the provisions of a contract entered into March 29, 1933, to which we will refer in more detail. No answer was filed to the petition, and at the time of argument it was admitted that the facts set forth therein are true. In our opinion this is a proper case for the entry of a declaratory judgment under the provisions of the Act of June 18, 1923, P. L. 840, and its supplements.

The J. & M. Doyle company was organized February 25, 1921, with 500 shares of stock owned as follows: John J. Doyle, Sr., 260 shares; William J. Doyle, 80 shares; Harry J. Doyle, 80 shares; Charles A. Doyle, 80 shares. John J. Doyle, Sr., died, and subsequently the First National Bank, on May 6, 1932, was appointed administrator of his estate. Eugene J. Mattis was appointed guardian for John J. Doyle, Jr., and William P. Doyle, sons of John J. Doyle, deceased. In settlement of some differences between the estate of John J. Doyle, Sr., and the corporation, a contract was entered into March 29, 1933, by which the various interests in the corporation were adjusted. The holdings of William J. Doyle, Harry J. Doyle, and Charles A. Doyle were increased to 100 shares each, and with regard to the remaining 200 shares the contract above referred to provides that when John J. Doyle, Jr., and William P. Doyle arrive at the age of 21 years the corporation shall deliver to each of them a certificate to equal one fifth of the then issued and outstanding capital stock of the corporation. Until such time as these children arrive at the age of 21 years, respectively, the corporation is to hold one fifth of its issued and outstanding capital stock in trust for each child. Further

contingent provisions for the payment of dividends were made, and it was agreed that the interest of the children in the corporation should not be voted by the guardian during minority.

Subsequently, William J. Doyle and Charles A. Doyle died, and on December 6, 1940, the corporation was adjudged bankrupt. The assets were converted to cash, the creditors paid, and on April 21, 1942, steps were taken to liquidate the assets of the corporation, which consisted of $18,100 over and above the amount necessary to discharge all indebtedness.

Excluding the ownership which vests in the minors under the contract of 1933, the outstanding shares in the corporation at this time are 172 in number, of which each minor owns four shares as heir-at-law of Charles A. Doyle, deceased, in addition to the interest acquired and held under the aforementioned contract. The reduction in the number of outstanding shares is due to the fact that 20 shares of common stock belonging to the estate of Charles A. Doyle were purchased by the corporation on September 19, 1938, and also to the fact that Harry J. Doyle, in settlement of a claim of the corporation against him, on February 2, 1942, surrendered 108 shares of stock held by him at the time of said settlement.

The guardian of John J. Doyle, Jr., and William P. Doyle claims that each of these minors is entitled to 104/372nds of the sum for distribution. The remaining stockholders, representing 164 shares of outstanding stock, contend that the minors are entitled to one fifth of the sum for distribution plus a proportionate amount based on the four shares of inherited stock.

The provision of paragraphs "A" and "B" of the contract, to the effect that when arriving at 21 years of age each of the sons shall be entitled to one fifth of the then issued and outstanding capital stock of the corporation, assumes that in the interim nothing will be done to prevent that provision of the contract being

carried out. The provision of paragraph "C" of the contract, that the corporation shall hold one fifth of its issued and outstanding stock in trust for each of said children, also supports that position. When the corporation purchased 20 shares of stock from the estate of one of the stockholders it necessarily did so from assets which were the property of the minors in proportion to their interest in the corporation. Can we say, had the corporation, with company assets, purchased all but one share of stock, exclusive of the minors' interest under the contract of 1933, that in this situation that share would be entitled to three fifths of the sum for distribution? We cannot arrive at such understanding from the terms of the agreement.

With regard to the 108 shares surrendered to the corporation by Harry J. Doyle, we have a somewhat similar situation. He owed the company money, and to the extent that he was indebted to it the minors had an interest, and when that indebtedness was compromised by the surrender of his stock the minors were entitled to a benefit therefrom in proportion to their holdings in the company. Every item of indebtedness of Harry J. Doyle was an asset of the company in which the minors had an interest, and that interest cannot be circumvented by any manipulation, however innocent, whereby the interest of remaining stockholders can be increased.

Our conclusion as to the intent of the contract is supported by the action of Harry J. Doyle, who, on September 21, 1938, delivered a certificate for 100 shares to the guardian of John J. Doyle, Jr., and a certificate for the same number of shares to the guardian of William P. Doyle. These certificates were issued prematurely under the terms of the agreement, but, nevertheless, there is indicated the construction placed upon the contract by a director and one of the interested stockholders.

The ratio of ownership vesting in the two minors, as provided by the contract, would have continued had not the corporation disturbed it by purchase of shares from the estate of Charles A. Doyle and by accepting the surrender of shares of Harry J. Doyle in payment of his indebtedness to the corporation. The corporation could not be operated for the benefit only of the owners of a three-fifths interest in it and therefore the two-fifths interest of the minors must share with the other interests. If the corporation was holding two fifths of its capital stock in trust for these minors, as the contract of March 29, 1933, provided, their ratio of ownership must increase with the purchase by or the surrender to the corporation of any portion of the three-fifths interest which vested in other owners.

At the time of the contract the two-fifths interest of the minors was the equivalent of 200 shares, and, though the stock was not to be issued to them until they became 21 years of age, now, for the purpose of liquidation, it must be determined that the presently outstanding stock of the corporation consists of these 200 shares plus the 8 shares which they inherited from the estate of Charles A. Doyle and the outstanding shares owned by others, in all 372 shares; and therefore each of the minors is entitled to 104/372nds of the fund on hand.

And, now, to wit, November 16, 1942, it is ordered and decreed that the fund for distribution to those beneficially interested in the J. & M. Doyle company, a corporation, shall be divided as follows: Eugene J. Mattis, guardian for John J. Doyle, Jr., 104/372nds; Eugene J. Mattis, guardian for William P. Doyle, 104/372nds; the owners of the remaining outstanding stock, 164/372nds; this being 1/372nd for each share of the remaining outstanding stock.